IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Tonda Y. Smith, | ) | CA No. 7:17-cv-1043-AMQ-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Palmetto Denture Care, P.A., Chris Just, Jim Fields, and Charles McNutt, II, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Tonda Y. Smith ("Plaintiff") filed this action against Palmetto Denture Care, P.A. ("Palmetto Denture"), Chris Just, Jim Fields and Charles McNutt, II (collectively "Defendants") alleging the following causes of action: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 as to Palmetto Denture; (2) retaliation as to Palmetto Denture; (3) sexually hostile work environment in violation of the "South Carolina Human Rights Act of 1964" as to Palmetto Denture; (4) breach of contract as to Palmetto Denture; (5) breach of contract with fraudulent intent as to Palmetto Denture; and (6) civil conspiracy as to Just, Fields and McNutt, II. (ECF No. 38.)[1]

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., this employment discrimination matter was referred to the United States Magistrate Judge for

---

[1] Plaintiffs initial complaint filed April 21, 2017. (ECF No. 1.) On June 13, 2017, Defendant filed a motion to dismiss. (ECF No. 20.) On September 15, 2017, Plaintiff filed an amended complaint adding a civil conspiracy claim. (ECF No. 38.) The motion to dismiss before the Court (ECF No. 45) relates to Plaintiff's amended complaint. (ECF No. 38.)

1

consideration of pretrial matters. On October 30, 2017, Defendants filed a motion to dismiss Plaintiff's causes of action for breach of contract, breach of contract with fraudulent intent and civil conspiracy pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 45.) Defendants' motion does not challenge Plaintiff's claims for race discrimination, retaliation or a sexually hostile work environment in violation of the South Carolina Human Rights Act of 1964. Plaintiff filed a response in opposition on November 27, 2017 (ECF No. 53) and Defendants filed a reply on December 4, 2017. (ECF No. 55.)

The Magistrate Judge issued a Report and Recommendation ("Report") recommending that Defendants' to Motion be granted. (ECF No. 62.) Plaintiff filed objections to the Report (ECF No. 65) on March 28, 2018, and Defendants filed a reply to Plaintiff's objections (ECF No. 67) on April 17, 2018.

For the reasons set forth herein, this Court adopts the Report to the extent consistent with this Order and Opinion and Defendants' Motion to Dismiss (ECF No. 45) is GRANTED.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court may accept, reject, or modify, in whole or in part, the report or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen (14) days after being served a copy of the Report. 28 U.S.C. § 636(b)(1). The Court is charged with making a de novo determination of any portions of the report to which a specific objection is made. The Court may accept, reject or modify, in whole or in part, the

recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b)(1).

The Magistrate Judge properly set forth the standard of review for Rule 12(b)(6) Motions. As noted by the Magistrate Judge, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## ANALYSIS

Plaintiff objects to the Magistrate Judge's findings that: (1) Plaintiff failed to make sufficient allegations establishing a plausible claim that Palmetto Denture's employee handbook altered her at-will employment status; (2) Plaintiff failed to state a claim that Palmetto Denture breached its contract with Plaintiff with fraudulent intent; and (3) Plaintiff's civil conspiracy claim arises out of her termination from employment. (ECF No. 48 at 10.) The Court addresses these objections in turn.

## A. Breach of Contract

Plaintiff claims that the Magistrate Judge erred by finding that Plaintiff failed to establish that her at-will employment contract was altered. (ECF No. 65, at 5.) Plaintiff asserts that "(1) a contract existed between Palmetto Denture and Plaintiff, (2) Palmetto Denture's policies are more than 'typical anti-discrimination and anti-retaliation policies,' and (3) Palmetto Denture must be bound, like Plaintiff, to the mandatory language of the governing policies." *Id.* at 6. Plaintiff argues that she has alleged all of the elements of a valid contract and that Palmetto Denture's Employee Handbook formed a binding contract that overcomes the presumption of at-will employment.

The Magistrate Judge correctly set forth the applicable law in South Carolina regarding the presumption of at-will employment. South Carolina has long followed the doctrine of employment at-will. *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (S.C. 2010). Generally, an at-will employee may be terminated with or without cause. *Stiles v. Am. Gen. Life Ins. Co.*, 516 S.E.2d 449, 450 (S.C. 1999). "Because employment is presumed to be at-will, in order to survive a motion to dismiss on a claim for breach of contract of employment, a plaintiff must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." *Brailsford v. Fresenius Med. Ctr. CNA Kidney Ctrs*. LLC, No. 2:15-CV-4012-DCN, 2017 WL 1214337 at *16-17 (D.S.C. April 3, 2017) (unpublished) (citing *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 WL 5587854, at *4 (D.S.C. Oct. 10, 2013) (unpublished))[2].

---

[2] The Court notes that there are two related *Brailsford* cases. The first case was dismissed on July 21, 2017 without prejudice because the plaintiff to allege that she had entered into a contract. *Brailsford v. Fresenius Medical Care CAN Kidney Centers LLC, et al.*, 2:15-cv-0239-DCN, 2017 WL 4459032, (D.S.C. July 21, 2015) (unpublished) ("*Brailsford I*") The plaintiff filed a second complaint, alleging the same causes of action. The court dismissed the plaintiff's second complaint on the same grounds. *Brailsford v. Fresenius Medical Care CAN Kidney Centers LLC, et al*, 2:15-cv-04012-DCN, 2017 WL1214337 at *8 (D.S.C. July 21, 2015) (unpublished) ("*Brailsford II*").

To address a breach of contract action in the context of at-will employment, it is necessary to first determine whether the parties entered into a contractual agreement altering the presumptive at-will employment relationship." *Weaver,* at \*5.

South Carolina courts have previously recognized that an employee handbook may create a contract defeating the presumption of at-will employment. *Brailsford II,* 2017 WL 1214337 at \*6; *Wharton v. Tolbert*, 65 S.E. 1056 (S.C.1909)). "A handbook forms an employment contract when: '(1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer.' " *Brailsford II*, 2017 WL 1214337 at \*6 (quoting *Grant v. Mount Vernon Mills, Inc*., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006)). "In order for a handbook to alter an employee's at-will status and create an employment contract, the employer must 'phrase the document's language in mandatory terms giving rise to a promise, an expectation and a benefit to an employee.' " *Id.* at \*6 (*quoting Nelson v. Charleston Cnty. Parks & Recreation Comm'n*, 605 S.E.2d 744, 747 (S.C. Ct. App. 2004). Applying South Carolina law, courts in this District have previously held that typical anti-discrimination and anti-retaliation polices found in most employee handbooks are insufficient to form a contract of employment necessary to overcome the at-will presumption. *Frasier v. Verizon Wireless*, C.A. No. 8:08–CV–356-HMH, 2008 WL 724037, at \*2 (D.S.C. Mar.17, 2008) (unpublished) (dismissing claim that the defendant violated the terms of its code of conduct and finding that an employer's promises that "everyone should feel comfortable to speak his or her mind" and that the employer "prohibits retaliation against employees who, in good faith, submit or participate in the investigation of any complaints…do not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated."); *King v. Marriott Int'l, Inc*., 520 F.Supp.2d 748, 756 (D.S.C.

2007) (dismissing the plaintiff's claim for breach of contract and finding that the employer's policy statements against discrimination and recrimination did not create a contract or otherwise alter the plaintiff's at-will status); *Hessenthaler v. Tri–Cnty. Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005) (dismissing claim for breach of anti-retaliation policy and finding that "[u]nlike a mandatory, progressive discipline procedure, a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired.").

Plaintiff disagrees with the Magistrate Judge's finding that Plaintiff has not sufficiently pled that the at-will presumption has been altered by Palmetto Denture's policies and procedures. (ECF No. 65.) Plaintiff argues that the policies and provisions in Palmetto Denture's Employee Handbook gave rise to specific promises and expectations that altered her at-will employment status. (ECF No. 65, at 6-7.) Specifically, Plaintiff claims that Palmetto Denture's "Harassment and Conduct of Employees" policies gave Plaintiff the expectation that Palmetto Denture would conduct investigations, punish employees and refrain from terminating her employment when incidents of sexual or physical harassment were reported. *Id.* Plaintiff also argues that the Court should consider all of Palmetto Denture's policies together and asserts that she has not restricted her claims to Palmetto Denture's anti-harassment or anti-retaliation provisions. (ECF No. 65, at 8.)

Plaintiff relies on the case of *Hall v. Family YMCA of Greater Augusta*, 2017 WL 3158776, No. 1:17-cv-00337-JMC (D.S.C. 2017) (unpublished). In *Hall*, the plaintiff alleged that her at-will employment status was altered because the defendant was controlled by mandatory termination policies and procedures in the defendant's employee handbook. *Id.* The *Hall* court held that the plaintiff had sufficiently alleged that the default at-will arrangement had been altered, noting that

"the policies in the [defendant's] handbook prevented Defendant from terminating employees without first seeking approval of the Policy Council" and that the plaintiff's allegations "sufficiently plead that the terms of the employment contract limited Defendant's right to terminate Plaintiff." *Id.* at *5.

In response to Plaintiff's Objections, Palmetto Denture argues that *Hall* is distinguishable from the present case. Palmetto Denture contends *Hall* did not involve a Title VII based claim, and the plaintiff in *Hall* alleged specific procedures in the Employee Handbook that prevented termination for reporting non-compliance with applicable regulations or without seeking approval of the Policy Council. (ECF No. 67, at 2.)

The Magistrate Judge found that the present case is distinguishable from *Hall*. (ECF No. 62 at 6.) Unlike the allegations in *Hall*, Plaintiff has not asserted specific factual allegations regarding the terms in the Employee Handbook or attached the Employee Handbook for the Court to consider in connection with Plaintiff's pleadings.[3] The Court agrees with the Magistrate Judge that the present case is more similar to the facts of *Brailsford I* and *Brailsford II*. (ECF No. 62, at

---

[3] Defendants attached a copy of the Employee Handbook to their motion to dismiss. (ECF No. 45-3) Plaintiff, however, has challenged the authenticity of the Handbook. (ECF No. 53, at 6.) The Court is not required to consider the contents of the Handbook in connection with Defendants' Rule 12(b)(6) motion to dismiss because the Defendant's Handbook was not part of Plaintiff's amended complaint and Plaintiff has challenged the authenticity of the Handbook. Although courts "generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint," in a motion under Rule 12(b)(6), there are exceptions. For example, courts "may properly consider documents attached to a ... motion to dismiss 'so long as they are integral to the complaint and authentic.' " *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Thus, the court may consider documents that are "integral to and explicitly relied on in the complaint" when the [plaintiff] "do[es] not challenge [their] authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999*); accord Zak v. Chelsea Therapeutics Int'l, Inc*., 780 F.3d 597, 606-07 (4th Cir. 2015). However, even if the Handbook is considered, Plaintiff must, under the pleading standard required by binding precedent, identify the specific provisions at issue, explain how those provisions create mandatory obligations, and explain how they were breached. Plaintiff failed to do this.

7

6-7.) In *Brailsford I* and *II*, the plaintiff did not attach the handbook to the complaint or identify any specific mandatory language in her complaint. *Id.* Both *Brailsford* courts ruled that general and conclusory allegations were not sufficient to establish the existence of an employment contract and granted the defendant's motion to dismiss. *Id.*; *see also Nicholson v. Sci. Applications Int'l Corp.*, No. 2:12-cv-2779, 2012 U.S. Dist. LEXIS 178837, 2012 WL 6568399, at *2 (D.S.C. Nov. 27, 2012) (unpublished) ("Plaintiff has only alleged in very general and conclusory terms that she 'entered into a contract' with the Defendant, executed various [unspecified] documents which constituted a contract of employment, and that the Defendant had an Employee Handbook which used 'mandatory language creating a contractual agreement.'").

The Court finds no error in the Magistrate Judge's analysis. Plaintiff's Amended Complaint does not contain sufficiently specific allegations about the provisions of the Employee Handbook that are at issue in this case. In paragraph 62, Plaintiff alleges that she relied "on the specific promises contained in Defendant's Employee Handbook." (ECF No. 38 at 9) In paragraph 63, the Plaintiff alleges "Defendant breached its employment contract with Plaintiff as set forth in the Employee Handbook by failing to protect Plaintiff from racially discriminatory acts." *Id*. In paragraph 64, Plaintiff alleges "Defendant arbitrarily deprived Plaintiff of her rights of a work environment free from discrimination under the contract between Plaintiff and Defendant by violating the policies and procedures of the Employee Handbook." *Id*. In paragraph 65, Plaintiff alleges "Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the Employee Handbook." *Id*. And in paragraph, 66, Plaintiff alleges that "Defendant's conduct in failing to protect Plaintiff from the sex harassment and racially biased actions of Defendant's agents, violated its own hiring practices and policies." *Id*. These allegations refer generally to the Employee Handbook and to

topics in the Employee Handbook. But the allegations fail to specify the actual provisions of the Employee Handbook at issue and fail to specify how such provisions create mandatory obligations.

As described above, *Iqbal* and *Twombly* require more. Even considering Plaintiff's allegations as true and construing all inferences in favor of the Plaintiff, the Amended Complaint does not contain sufficient facts to overcome the at-will employment presumption and thus fails to state a claim for breach of contract. Accordingly, Plaintiff's claim for breach of contract is dismissed with prejudice.[4]

### B. Breach of Contract with Fraudulent Intent

Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed to establish the existence of a contract necessary to support a claim for breach of contract with fraudulent intent. (ECF No. 65, at 9.) Under South Carolina law, to properly plead a claim for breach of contract with fraudulent intent, a plaintiff must allege (1) a breach of contract, (2) fraudulent intent relating to breaching the contract and not merely in its making and (3) a fraudulent act accompanying the breach. *Williams v. Intier Auto. Interiors of America, Inc.*, 2011 WL 588216, at *2 (D.S.C. Feb. 10, 2011) (unpublished) (citing *Harper v. Ethridge*, 348 S.E.2d 374, 378 (Ct. App. 1986)).

A breach of contract is an essential element of a claim for breach of contract with fraudulent intent. The Court has already addressed Plaintiff's arguments regarding the existence of a contract and found that Plaintiff has failed to state a claim. Therefore, this defect necessarily is fatal to Plaintiff's breach of contract with fraudulent intent claim.

---

[4] Further, even in her Memorandum in Opposition to Motion to Dismiss (ECF No. 53) and Objections to the Magistrate Judge's Report (ECF No. 65), Plaintiff only refers to the Handbook in terms of general topics.

In addition, the Court has reviewed the allegations in the Fifth Cause of Action which is the allegation for breach of contract accompanied by fraudulent intent. A review of those allegations reveals that there is no reference or allegation of "fraudulent intent relating to the breach" or "a fraudulent act accompanying the breach." Further, Plaintiff did not plead any specific facts which would support those essential requirements of a claim for breach of contract with fraudulent intent.

Further, beyond the content of the allegations in the Fifth Cause of Action, the Court has considered the paragraphs in the Amended Complaint Plaintiff argues in her Objections to the Report satisfy the elements of the breach of contract with fraudulent intent claim. In her Objections, Plaintiff argues paragraphs 27, 28, 30, 33 and 34 of the Amended Complaint satisfy her pleading obligations for this claim. (ECF No. 65, at 9.) However, these allegations, even if accepted as true, do not plead fraudulent intent relating to the breach or a fraudulent act accompanying the breach. While they may support the causes of action not at issue at this time, Plaintiff's allegations fail to set forth enough facts to state a claim to relief for breach of contract with fraudulent intent that is plausible on its face.

For the foregoing reasons, Plaintiff's cause of action for breach of contract with fraudulent intent is dismissed with prejudice.

**C. Civil Conspiracy**

Last, Plaintiff objects to the Magistrate Judge's finding that Plaintiff's civil conspiracy claim arises out of her termination and is barred under the reasoning of *Angus v. Burroughs & Chapin Co. ("Angus I")* 596 S.E.2d 67 (S.C. Ct. App. 2004) (rev'd on other grounds by *Angus v. Burroughs & Chapin Co.* ("*Angus II*"), 628 S.E.2d 261 (2006). (ECF No. 65 at 10.) Plaintiff argues that, under the reasoning of *Saxton v. Town of Irmo Police Department, Brian Buck and March*

*Shirley,* her claim is not based on her termination but rather on being isolated and harassed by individual defendants Just, Field and McNutt. No. 3:15-CV-1244-JFA, 2016 WL 1178201, (D.S.C. Mar. 28, 2016) (unpublished). (ECF No. 65 at 10, 11.) Plaintiff claims that, like the plaintiffs in *Saxton* and *Wilson*, she has alleged that the actions of the individual defendants went beyond her termination and the individual defendants' actions were not confined to her termination, but included the actors' behavior to "isolate and ostracize." (ECF No. 65, at 11.)

The Magistrate Judge correctly set forth the elements applicable standards of a claim for civil conspiracy. A civil conspiracy exists when there is (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damage. *Island Car Wash, Inc. v. Norris*, 358 S.E.2d 150, 152 (S.C. Ct. App. 1987). An at-will employee cannot maintain an action for civil conspiracy against his employer where the employee alleges that the employer conspired with others to terminate his employment. *Ross v. Life Ins. Co. of Virginia*, 259 S.E.2d 814, 815 (1979); *see also Angus v. Burroughs & Chapin Co.*, 628 S.E.2d 261, 262 (2006); *Faile v. Lancaster County, S.C.*, No. 0:11-cv-2206-CMC, 2013 WL 786447, at *4 (D.S.C. Mar. 1, 2013) (unpublished) (holding that an at-will employee cannot sue his employer "or anyone acting within his authority on behalf of his employer" for civil conspiracy arising out of his termination). However, an at-will employee may maintain an action for civil conspiracy where the alleged conspiracy is based on harm other than termination. *Reed v. Aiken*, No. 1:09-CV-1744-MBS, 2010 WL 2985805, at *1 (D.S.C. July 26, 2010) (unpublished) ("the at-will employment doctrine articulated in *Angus* and *Ross* does not govern actions by employees based on harm other than termination such as isolation and ostracization").

In determining whether allegations are sufficient to allege a conspiracy based upon more than just termination, courts distinguish between poor treatment resulting in a termination and poor

11

treatment resulting in demotion or resignation. *Reed* at *1 (finding that an at-will employee's civil conspiracy was not barred where the plaintiff alleged that the defendants harassed and vilified him, which ultimately led him to resign); *Saxton*, 2016 WL 1178201 (denying the defendants' motion to dismiss where plaintiff alleged facts to support the claim that defendants harassed him into resigning); Faile, 2013 WL 786447 (granting the defendants' motion to dismiss where the plaintiff alleged that defendants "engag[ed] in a campaign to have him terminated" and noting that "although Plaintiff argues that his civil conspiracy claim goes beyond his termination, Plaintiff's amended complaint is devoid of any such allegations and even specifies that the purpose and result of the civil conspiracy was to terminate him from his employment").

As the Magistrate Judge explained, Plaintiff's allegations specify that the purpose and result of the alleged civil conspiracy was to terminate her employment. (ECF Nos. 62, at 10, and 38, at ¶ 79, 81.) According to Plaintiff's Amended Complaint, Defendants Just, Field and McNutt, II "participated in a common design through a concerted action to terminate Plaintiff in breach of its employment contract, by isolating Plaintiff and not informing Plaintiff of her rights as to the racial discrimination and sex harassment that occurred in Defendant's [sic] facility" (ECF No. 38, at ¶ 79) (emphasis added). The Amended Complaint also alleges that Just, Field and McNutt, II "furthered the conspiracy by cooperation with each other and provided aid and encouragement to each other . . . in that they agreed to isolate Plaintiff from meetings concerning the sexual harassment by McNutt" and that they "ultimately terminated Plaintiff." *Id.* at ¶ 81. Thus, while allegations in the Amended Complaint do refer to isolation, they also assert that the conduct resulted in termination. Accordingly, these allegations, even if accepted as true, are the very sort that have been held to be insufficient to support a civil conspiracy claim by the South Carolina Court of Appeals in *Angus* and by another court in this District in *Faile*. Accordingly, because

Plaintiff civil conspiracy claim against the Defendants arises out of her termination from employment, Plaintiff's claim against Just, Fields and McNutt, II must be dismissed.

Further, Plaintiff's cause of action for civil conspiracy fails under the intracorporate conspiracy doctrine. Under that principle, it is not legally possible for there to be a conspiracy within a corporation. *Anvar v. Greenville Hospital System*, No. 2007–UP–004, 2007 WL 8324255 at *4 (S.C. Ct. App. 2007) (unpublished). Said another way, "a corporation cannot conspire with itself," *McMillan v. Oconee Memorial Hosp., Inc*., 626 S.E.2d 884, 887 (S.C. 2006); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) ("[A]n agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013) ("The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own."). Applying this doctrine, the Amended Complaint admittedly does not name Palmetto Denture as a defendant regarding this claim. Instead, it names only the individual defendants who are employees of Palmetto Denture. However, Plaintiff alleges in the Amended Complaint that the individual defendants were employees of Palmetto Denture and were acting as its agents. Thus, the alleged conspirators were, according to Plaintiff, all agents and employees of a corporate entity and the alleged acts in carrying out the conspiracy were all part of the duties as employees and agents. Those allegations fail as a matter of law under the intracorporate conspiracy doctrine.

South Carolina courts have allowed claims of civil conspiracy when there are allegations that officers, directors, employees or agents of a corporation are acting in furtherance of their personal interests and not the interests of the corporation or if they are acting outside the scope of their authority with the corporation. *See Cricket Cove Ventures, LLC v. Gilland*, 701 S.E.2d 39

13

(S.C. Ct. App. 2010) (holding that the intracorporate immunity doctrine did not apply to a developer's civil conspiracy claim where the developer alleged that individual county council members had a personal stake in preventing the developer from moving forward with its development plans); *Pridgen v. Ward,* 705 S.E.2d 58 (S.C. Ct. App. 2010) (holding the independent personal stake exception applied under South Carolina law where a former employee alleged that a former co-worker developed a personal vendetta against him because he refused his former co-worker's request to make false statements in a report); *but see Anvar,* 2007 WL 8324255 at *5 (holding that the personal stake exception did not apply where a physician alleged a civil conspiracy between employees and agents of a hospital to suspend the physician after defendants reported the physician's alleged misconduct to a disciplinary board because the defendants acted on behalf of the hospital); *Broyhill v. Resolution Management Consultants, Inc.,* 736 S.E.2d 867 (S.C. Ct. App. 2012) (finding that the independent personal stake exception did not apply where the plaintiff, a former employee of defendants, did not produce any evidence that defendants acted outside of their official capacities as officers of the former employer in bringing an action against plaintiff because the defendants could not conspire with their employer). In this case, however, Plaintiff has not pled sufficient factual allegations about an interest of any of individual defendants aside from their responsibilities and duties with Palmetto Denture. Therefore, Plaintiff offers no allegations in the Amended Complaint that would, if accepted as true, support the individual personal stake exception to the intracorporate conspiracy doctrine. For this separate and independent reason, Plaintiff's civil conspiracy claim should be dismissed.

For the foregoing reasons, Plaintiffs Sixth Cause of Action for civil conspiracy is dismissed with prejudice.

**CONCLUSION**

The Court has carefully reviewed the objections made by Plaintiff and has conducted the required de novo review. After considering the record in this case, this Court determines that the Magistrate Judge's recommended disposition is correct and the Report is adopted and incorporated herein by reference to the extent it is consistent with this Opinion and Order. Further, this Court has made additional findings about separate and independent grounds for the dismissal of Plaintiff's claims for breach of contract with fraudulent intent and for civil conspiracy as set forth above. Therefore, it is ORDERED that Defendants' Motion to Dismiss (ECF No. 45) is GRANTED and Plaintiff's claims for breach of contract against Palmetto Denture, breach of contract with fraudulent intent against Palmetto Denture, and civil conspiracy against Just, Fields and McNutt, II are dismissed with prejudice.

IT IS SO ORDERED.

/s/ A. Marvin Quattlebaum, Jr.
United States District Judge

July 27, 2018
Spartanburg, South Carolina